UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CONOCOPHILLIPS COMPANY,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>MILESTONE PACIFIC PROPERTIES, LLC, et al.,<br><br>　　　　Defendants. | Case No: C 10-00079 SBA<br><br>**ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Docket 15] |

　　　　The parties are presently before the Court on Plaintiff's Motion for Summary Judgment or, Alternatively, Partial Summary Judgment. (Docket 15.) Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS-IN-PART and DENIES-IN-PART the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

**I.　BACKGROUND**

　　**A.　PLAINTIFF'S PRIOR LAWSUIT**

　　　　Certain of the current Defendants formerly operated a Union 76 gasoline service station located in Vallejo, California (the "Real Property").[1] (Davidson Decl. ¶ 2.) Plaintiff owns the Union 76 brand, and associated intellectual property in California. (Id.) As part of the relationship, Plaintiff entered into various agreements with those Defendants. (Id.) Among those agreements was a deed of trust that secures all of Defendant Milestone Pacific Properties, LLC's ("Milestone") obligations to Plaintiff (the "Deed of Trust"). (Id., Ex. A.) The Deed of

---

[1] Those Defendants are Milestone Pacific Properties, LLC, BPG Pacific, LLC, Saeed Ghafoori, and Glenn Larsen. The remaining Defendants in this action are Copeland Creek Apartments, LLC (subsequent owner of the Real Property), Gissou Ghafoori (Saeed Ghafoori's spouse), and First American Title Insurance Company.

Trust provides that Milestone is the Grantor, First American Title Insurance Company is the Trustee, and Plaintiff is the Beneficiary.  (Id.)

After those Defendants terminated and/or defaulted under these agreements, Plaintiff commenced suit in this Court on May 28, 2008.  (ConocoPhillips Co. v. Milestone Pacific Properties, LLC, et al., Case No. C 08-02695-SBA.)  Plaintiff's complaint in that action sought damages of $1,133,089.12, foreclosure of the Deed of Trust, and compensatory damages, interest, and attorney's fees pursuant to the parties' agreements.

### B. THE SETTLEMENT AGREEMENT AND PROMISSORY NOTE

In April 2009, the parties executed, in the prior suit, a Settlement Agreement and Mutual Release ("Settlement Agreement").  (Davidson Decl. ¶ 4, Ex. B.)  The Settlement Agreement provides that Milestone, BPG Pacific LLC ("BPG"), Copeland Creek Apartments, LLC ("Copeland"), Saeed Ghafoori, Gissou Ghafoori, and Glenn Larsen ("Larsen") shall pay Plaintiff $800,000 in settlement pursuant to a Promissory Note signed by those entities and individuals.  (Id., Ex. B at ¶ 1.)  Gissou Ghafoori did not sign the Settlement Agreement, nor was she a party to the prior lawsuit.  (Milestone, BPG, Copeland, Saeed Ghafoori, and Larsen are referred to herein as the "Settlement Defendants.")  However, the Settlement Agreement states that the Settlement Defendants "and Saeed Ghafoori's spouse, Gissou Ghafoori, agree to pay CP [Plaintiff] $800,000 pursuant to the Promissory Note attached hereto as Exhibit A."  Gissou Ghafoori is a signatory to the Promissory Note.  (Id., Ex. C at pp. 1, 5.)

Payments under the Promissory Note are to occur in eight equal installments of $100,000.  (Id., Ex. C at § I.)  The first payment was to be made "within forty-five (45) days of execution of [the Promissory Note]," the second payment to be made "ninety (90) days after execution of [the Promissory Note]," and the remaining six payments to be made "every thirty (30) days thereafter."  (Id.)  The parties subsequently agreed that these deadlines would begin to run on June 19, 2009.  (Friedenberg Decl. ¶ 3.)  Thus, the first payment was due August 3, 2009, the second on September 17, 2009, with the remaining payments due every 30 days thereafter.  (Id.)

The Settlement Agreement also requires the Settlement Defendants to provide Plaintiff with "fully and properly executed" copies of a "Modification Agreement" modifying the existing Deed of Trust and a "Memorandum of Modification Agreement" reflecting the deed modification. (Davidson Decl., Ex. B at ¶ 2.)  The Modification Agreement and Memorandum of Modification Agreement confirm that the existing Deed of Trust secures the new obligations created by the Settlement Agreement and Promissory Note.  (Id., Exs. D, E.)  The Settlement Defendants eventually provided the properly executed documents, but, as discussed below, initially failed to do so.

### C. THE DEED OF TRUST AND MEMORANDUM OF MODIFICATION

The Deed of Trust provides that it shall secure "[p]ayment of all other sums, with interest thereon, which may hereafter be loaned to Grantor, their respective successors, or assigns, by Beneficiary, when evidenced by a promissory note, note or other agreement reciting that they are secured by this Deed of Trust."  (Davidson Decl., Ex. A at § III(C).)  In addition, the Modification Agreement and Memorandum of Modification Agreement that the parties executed pursuant to the Settlement Agreement confirm that the existing Deed of Trust shall secure the new obligations created by the Settlement Agreement and Promissory Note.  (Id., Ex. B at § 2; Ex. C at p. 1 (Recitals); Ex. D at Recitals B, C and § 3; Ex. E at §§ 1-5.)  The Deed of Trust therefore secures Defendants' obligations under the Settlement Agreement and Promissory Note.

The Deed of Trust pledges as security all Milestone's rights, interests, estates and other claims in and to the Real Property, including all buildings, improvements, equipment, inventory and other tangible personal property thereon.  (Id., Ex. A at §§ I, IV.)  It is binding on Milestone, as well as Copeland, BPG, and any other successor or subsequent purchaser of the subject property.[2]  (Id. at § X(D); Exs. D, E.)  Included in the definition of "personal property" are the following: (1) the right to "collect and receive all of the rents, income, receipts, revenues, profits and other income" arising out of any existing or future leases; (2)

---

[2] The evidence shows that Milestone has transferred the Real Property to Copeland and some or all of the subject personal property to BPG.  (Friedenberg Decl. ¶ 4, Ex. B.)

"all existing and future goods located on or off the Property which are now or in the future owned by the Grantor and used or to be used solely in the operation or occupancy of the [Real Property] or in any construction on the [Real Property]"; and (3) "all general intangible relating primarily to the development or use of the [Real Property]."  (Id., Ex. A at §§ I(G), I(H), and IV.)

The Deed of Trust provides that "[u]pon the occurrence of an Event of Default all sums secured [by the Deed of Trust] shall immediately become due and payable at the option of" Plaintiff.  (Id. at § IX.)  The Deed of Trust also provides that Plaintiff may, at its option, "cause this Deed of Trust to be foreclosed as a mortgage and start a court action which will result in a sale of the Collateral Property to reduce the Indebtedness …."  (Id. at § IX(D).)  The Deed of Trust defines "Collateral Property" as the "entire estate, property, and interest hereby conveyed to Beneficiary."  (Id., § I(N).)  Finally, the Deed of Trust provides that, in the Event of a Default, Plaintiff may have a "receiver appointed to take possession of any or all of the Collateral Property …," and may "[i]nstruct Trustee to sell the Collateral Property …."  (Id. at §§ IX(B), (C).)

### D. DEFENDANTS' BREACH OF THE SETTLEMENT AGREEMENT

#### 1. The Settlement Defendants Failed to Provide the Properly Executed Modification Agreement

As indicated, the Settlement Agreement requires that the Settlement Defendants provide a "properly" executed Memorandum of Modification Agreement (i.e., an agreement executed by the current Real Property owner, Copeland).  However, the Settlement Defendants' counsel provided Plaintiff with documents executed only by Milestone, which no longer owns the Real Property.  (Friedenberg Decl. ¶ 4, Ex. B.)  On May 20, 2009, counsel for the Settlement Defendants confirmed that Copeland would execute a Memorandum of Modification Agreement.  (Id. ¶ 4, Ex. B.)  However, Plaintiff was not provided with the executed document until October 2009, and then only after Plaintiff moved to enforce the settlement in the prior lawsuit.  (Id. ¶ 7.)  Defendants do not dispute this.  Due to that delay, Plaintiff represents that it incurred attorney's fees of $16,068.76.  (Id. ¶ 10.)

### 2. All Defendants Breached Their Payment Obligations

On August 3, 2009, Defendants made the first payment of $100,000 under the Settlement Agreement and Promissory Note. (Id. ¶ 8.) The second payment was due on September 17, 2009. (Id. ¶ 3 and Ex. A; Davidson Decl., Ex. C at § I.) Defendants failed to make that payment or any further payments. (Davidson Decl. ¶ 8.) On September 14, 2009, Defendants notified Plaintiff that they would not make the remaining payments. (Id. ¶ 8, Ex. G.) [3]

A default under the Promissory Note occurs when "Borrower fails to perform any covenant or observe any condition contained in the Settlement Agreement and Mutual Release, in the Deed of Trust which secures this Note, or in the Modification Agreement or Memorandum of Modification Agreement or becomes in default under any of the foregoing." (Id., Ex. C at § II(A)(1).) Default also occurs when the "Borrower fails to perform any covenant or observe any condition under this Note, including without limitation any failure by Borrower to make to Lender any payment due hereunder in the amount and at the time required by this Note." (Id. at § II(A)(4).)

In the event of default, "[t]he unpaid principal balance of the Loan [here, $700,000] shall immediately become due and payable as of the date on which" the default occurred and "the principal shall bear interest at a default rate of ten percent (10%) …." (Id. at §§ I, II(A)-(B).) On October 6, 2009, Plaintiff advised Defendants of their default and demanded immediate payment of the full balance under the Promissory Note pursuant to the acceleration clause. (Friedenberg Decl. ¶ 9, Ex. F.) Defendants have not complied. (Id. ¶ 9.)

### E. THE INSTANT LAWSUIT AND PLAINTIFF'S CURRENT MOTION

On January 6, 2010, Plaintiff filed the instant action, which was later related to its prior lawsuit (Case No. C 08-02695-SBA) before this Court. Plaintiff brings the following claims: (1) Breach of Contract; and (2) Foreclosure and Specific Performance of Deed of Trust. Federal jurisdiction is premised on diversity of the parties.

---

[3] Defendants initially provided a check to Plaintiff for the second payment, but subsequently notified Plaintiff that they had stopped payment on the check. (Id. ¶ 9, Ex. F.)

Plaintiff asserts that the material facts are not subject to dispute.  Therefore, Plaintiff has moved for summary judgment, asking the Court to enter judgment as follows: 1) in favor of Plaintiff in the amount of $716,068.76 (which includes the amount owed under the Promissory Note, plus the attorney's fees indicated above), plus prejudgment interest at 10%; 2) foreclosing the Deed of Trust; 3) ordering sale of the subject real and personal property, with the proceeds to be applied in payment of the amounts due to Plaintiff; and 4) providing for judgment against each Defendant and in favor of Plaintiff in the amount of any deficiency after foreclosure and sale.

## II. DISCUSSION

### A. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'"  Ricci v. DeStefano, -- U.S. --, 129 S.Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).  An issue of fact is "material" if, under the substantive law of the case, resolution of the factual dispute might affect the outcome of the claim.  See Anderson, 477 U.S. at 248.  Factual disputes are genuine if they "properly can be resolved in favor of either party."  Id. at 250.  Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could

- 6 -

resolve the material issue in his or her favor.  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).

  B.  ANALYSIS

    1.  **Plaintiff Is Entitled to Judgment on Its Breach of Contract Claim (First Claim)**

  The elements of a claim for breach of contract are: 1) a contract; 2) plaintiff's performance; 3) defendant's breach; and 4) resulting damage to plaintiff.  Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal.App.3d 1371, 1388 (1990).  The existence of the Settlement Agreement, Promissory Note, Deed of Trust, Modification Agreement and Memorandum of Modification Agreement is undisputed.  By failing to properly execute the Memorandum of Modification Agreement until Plaintiff brought its motion to enforce the settlement, and by failing to make payments due under the Settlement Agreement and Promissory Note, Defendants have breached the Promissory Note and Settlement Agreement.  Plaintiff has been damaged as it has not received the required payments, and it incurred attorney's fees and costs in moving to enforce the Settlement Agreement.

  In their opposition, Defendants do not dispute that they failed to properly execute the Memorandum of Modification Agreement, or that they defaulted under the Promissory Note.  Rather, they argue that: (1) the Settlement Agreement and Promissory Note are void for lack of consideration; and (2) the Settlement Agreement, the Promissory Note, and related agreements are void because they were entered into under duress.  Those arguments are addressed below.

    *a)*  ***Defendants' Argument Regarding Lack of Consideration Fails***

  At the outset, the Promissory Note explicitly states that it is given "FOR VALUE RECEIVED, the receipt and sufficiency of which are hereby acknowledged…."  (Davidson Decl., Ex. C at p. 1, ¶ 1.)  Such a recital "is an admission, and is prima facie evidence that such was the consideration." 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts § 207.  Indeed, the Settlement Agreement (which the Promissory Note explicitly incorporates), makes clear the consideration: Plaintiff promised to dismiss the prior suit in return for execution by

1  those Defendants, as well as Gissou Ghafoori, of the incorporated Promissory Note and
2  payment of the settlement amount.  Moreover, California Civil Code § 1614 provides that "a
3  written instrument is presumptive evidence of a consideration."
4        Nevertheless, Defendants first assert that the Promissory Note lacks consideration
5  because it and the Settlement Agreement are separate agreements that cross-reference each
6  other.  However, under California law, where a transaction comprises multiple,
7  contemporaneously executed agreements, each agreement is supported by the same
8  consideration and is therefore enforceable.  Ranco Santa Fe Pharmacy, Inc. v. Seyfert, 219
9  Cal.App.3d 875, 878 (1990) ("[w]hen . . . the guaranty is made coincidentally with the
10 promissory note, the guaranty is supported by the same consideration as the note and is
11 enforceable.").  Defendants do not dispute that the Settlement Agreement and Promissory Note
12 were executed as part of the same settlement, and at the same time.  (Defs.' Opp. at 2.)
13 Accordingly, that argument fails.
14       Second, Defendants argue that although the Promissory Note references the Settlement
15 Agreement, it does not do so with sufficient specificity so "'that the paper may be identified
16 beyond all reasonable doubt.'"  (Id. at 4; quoting PaineWebber, Inc. v. Bybyk, 81 F.3d 1193,
17 1201 (2nd Cir. 1996)).[4]  That argument lacks merit.  The Promissory Note specifically refers to
18 the "Settlement Agreement by which Borrower is obligated to pay lender $800,000 as set forth
19 therein …." (Davidson Decl., Ex. C at p. 1, ¶ 2.)  Because the Promissory Note and Settlement
20 Agreement were executed contemporaneously, Defendants' argument that any ambiguity exists
21 is disingenuous.  Moreover, Defendants do not argue, or submit evidence to establish, that the
22 parties entered multiple settlement agreements such that some ambiguity exists as to which

---

[4]  As Plaintiff correctly argues, the PaineWebber decision inapposite.  First, it applies New York law.  Further, the case is substantively inapplicable.  In PaineWebber, the court was asked to determine whether the National Association of Securities Dealers (NASD) Code had been incorporated by reference into an arbitration agreement; the Court found it had not because the agreement did not clearly identify the allegedly incorporated document.  Id. at 1201.  The court was therefore required to construe the ambiguity against the drafter (i.e., the party arguing for the incorporation by reference).  In this case, however, the Settlement Agreement and Promissory Note explicitly reference each other.  Moreover, the parties specifically agreed that the Settlement Agreement was mutually drafted such that ambiguities would not be resolved against any party. (Davidson Decl., Ex. B at ¶ 16.)

particular agreement is referenced in the Promissory Note.  Rather, the evidence shows that the parties entered into a single Settlement Agreement and a single Promissory Note, and each references the other.

Third, Defendants argue that Plaintiff "will not be able to show beyond all reasonable doubt that the 'Promissory Note' referenced in the Settlement Agreement is the Note that was signed by among others, Gissou Ghafoori." (Defs.' Opp. at 4.)  However, neither Gissou Ghafoori nor any other Defendant has submitted a declaration stating that she or he did not sign either agreement.  Rather, Defendants admit in their opposition that "[i]n addition to the other defendants, Gissou Ghafoori executed the promissory note . . . for payment of the $800,000 settlement with ConocoPhillips" as part of the April 2009 settlement.  (Id. at 2.)  Likewise, in their answers to the complaint, Defendants all admit that the parties executed the Settlement Agreement in April 2009, and that as part of the settlement, the Defendants (including Gissou Ghafoori) would sign – and pay Plaintiff $800,000 pursuant to – the Promissory Note. (Docket Nos. 20, 21, 22, 23, 24, all at ¶ 24.)  Indeed, Defendants made the first $100,000 payment due under the Promissory Note.  Thus, the evidence shows that the Promissory Note was executed by the parties as part of their April 2009 settlement.

Lastly, Defendants contend that "[t]he Note is unsupported by consideration and is void since there is no evidence that Gissou Ghafoori had entered into a Settlement Agreement and Mutual Release."  (Defs.' Opp. at 4.)  Defendants seem to be arguing that the Promissory Note is unenforceable, as unsupported by consideration, because Gissou Ghafoori signed it but not the Settlement Agreement.  Defendants have cited no authority in support of this argument.  Furthermore, as indicated, the Promissory Note includes a recital admitting the sufficiency of the consideration received.  The evidence shows that the consideration was the dismissal of Plaintiff's lawsuit against Gissou Ghafoori's spouse.

For these reasons, this Court finds Defendants' argument that the Promissory Note and Settlement Agreement are void for lack of consideration to be unpersuasive.

### b) *Defendants' Economic Duress Argument Also Fails*

Defendants next argue that they should be relieved of their contractual obligations because the Settlement Agreement was the product of "illegal business compulsion," relying exclusively on Rich & Whillock, Inc. v. Ashton Development, Inc., 157 Cal.App.3d 1154 (1984). Rich & Whillock does not support Defendants' position. There, a general contractor had agreed to pay for various charges invoiced by a subcontractor. Id. at 1156. Upon completion of the work, the general contractor refused to pay, but instead presented a "take it or leave it" offer of less than the agreed upon amount, with knowledge that the subcontractor "would face financial ruin if [it] did not accept the lesser sum." Id. at 1157. The subcontractor accepted the lesser payment, and released any right to additional payment. Id. The court set aside the release, and found the general contractor liable for the full invoiced amount, finding the general contractor's bad faith refusal to pay the full amount to which it was obligated constituted the required wrongful act to state the defense of duress. Id. at 1160-61.

In so finding, the Rich & Whillock court recognized that "[t]he underlying concern of the economic duress doctrine is the enforcement in the marketplace of certain minimal standards of business ethics. Hard bargaining, 'efficient' breaches and reasonable settlements of good faith disputes are all acceptable, even desirable, in our economic system." Id. at 1159 (internal citation omitted). Thus, "the doctrine may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." Id. at 1158 (internal citations omitted). "The assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment may constitute a wrongful act for purposes of the economic duress doctrine." Id. at 1159 (internal citations omitted).

Here, Defendants have submitted no evidence of wrongful conduct by Plaintiff in connection with the agreements. To the contrary, Defendants admit that it was their own contractual breaches that led to the initial lawsuit. (Defs.' Opp. at 5: "[o]n January 17, 2008, Milestone notified ConocoPhillips that it was terminating the Reseller Agreement and would stop purchasing and selling ConocoPhillips Union 76 gasoline as a result.") As a result of that

termination by Milestone, Plaintiff sought damages in the amount of $1,133,089.12 (reflecting contractual liquidated damages and repayment of a loan Plaintiff had made to Milestone), foreclosure of the Deed of Trust, and compensatory damages, interest and attorney's fees pursuant to the parties' agreements. (See Case No. 08-02695-SBA, Docket No. 1 at ¶ 47, Prayer.) By the Settlement Agreement, Plaintiff agreed to accept $800,000 in full payment of the amounts owed by Defendants. Thus, the evidence shows that Plaintiff did not force Defendants to compromise their right to payment (as in Rich & Whillock), but rather agreed to a compromise of its own potential damages.[5]

Defendants argue that they were nevertheless acting under economic duress because "[i]t was economically unfeasible for Defendants to defend the lawsuit much less have an extended battle with ConocoPhillips. . . ." (Defs.' Opp. at 5.) In support of that argument, Defendants rely on the declaration of Saeed Ghafoori, in which he simply states, without any explanation or supporting facts, that "[t]he liquidated damages clause and attorneys' fees and costs provision made litigation very costly for Defendants and Defendants had no choice but to agree to a settlement." (Ghafoori Decl. ¶ 10.) However, the evidence shows that the settlement was the product of extensive negotiations among the parties. (Reply Friedenberg Decl. ¶ 3.) The Settlement Agreement explicitly recognizes that "[t]he Parties hereto warrant and agree that this Agreement is executed freely and voluntarily, and with and upon the advice of counsel." (Docket No. 17, Ex. B at ¶ 13.) At all times during those negotiations, Defendants were represented by counsel. (Reply Friedenberg Decl. ¶ 3.) The negotiations were conducted entirely by counsel. (Id.) In view of those factors, Defendants' after-the-fact assertion of "economic duress" rings hollow.

Lastly, Defendants suggest that Plaintiff wrongfully refused to sell BPG a service station property located in San Francisco, i.e., a property other than the one that is the subject of either the current or prior lawsuit. Defendants have submitted no credible evidence to

---

[5] See also Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian, 218 Cal.App.3d 1058, 1079 (1990) (a party "has a perfect right to prosecute a lawsuit in good faith …"; "Language can be found in many decisions that it is not an illegal threat for a person to do what he has a legal right to do.") (internal quotation marks and citations omitted).

demonstrate any wrongful conduct by Plaintiff.  Rather, they offer only a few conclusory and unexplained assertions in the Ghafoori declaration.  (Ghafoori Decl. ¶¶ 2-7.)  Moreover, the Ghafoori declaration indicates that the transaction to which he refers occurred in 2006.  (Id.)  Defendants do not attempt to explain how a claimed 2006 dispute could have constituted duress in 2009.  For example, Defendants have submitted no evidence that Plaintiff threatened in bad faith to cancel a collateral contract to force Defendants to enter into the Settlement Agreement.[6]

In sum, Defendants have not established that the agreements at issue were entered into under economic duress.  Plaintiff is entitled to summary judgment on its First Claim for breach of contract.

### 2. Plaintiff Is Entitled to Judgment on Its Claim for Foreclosure and Specific Performance of the Deed of Trust (Second Claim)

By its Second Claim, Plaintiff seeks foreclosure and specific performance of the Deed of Trust, including having a receiver appointed to take possession of and sell the subject real and personal property.  Defendants have not contested that their default warrants foreclosure of the Deed of Trust or sale of the subject property.

California Code of Civil Procedure §§ 725a, et seq., governs judicial foreclosure procedures.  Section 725a provides that "the beneficiary or trustee named in a deed of trust … with power of sale upon real property or any interest therein to secure a debt or other obligation … shall have the right to bring suit to foreclose the same in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage upon such property."  Accord Ortiz v. Accredited Home Lenders, Inc., 639 F.Supp.2d 1159, 1165 (S.D. Cal. 2009).  California Code of Civil Procedure § 726(a) provides that a court may direct the sale of

---

[6]   Plaintiff has objected to portions of the Ghafoori declaration based on irrelevance and other evidentiary grounds.  Having found that, even taking the Ghafoori declaration into account, Defendants have failed to establish economic duress, those objections are DENIED as moot.

encumbered real property in an action for the recovery of any debt or enforcement of any right secured by a mortgage upon the real property. See Cal. Code Civ. Proc. § 726(a).[7]

In this case, there is no triable issue on Plaintiff's Second Claim for foreclosure and specific performance of the Deed of Trust. The Deed of Trust names Plaintiff as its beneficiary, and provides that "[u]pon the occurrence of an Event of Default all sums secured [by the Deed of Trust] shall immediately become due and payable at the option of" Plaintiff. (Davidson Decl., Ex. A at § IX.) As shown, Defendants have failed to make payments under the Settlement Agreement and Promissory Note. Such constitutes an "Event of Default" under the Deed of Trust (i.e., a failure to perform a financial obligation imposed thereby) entitling Plaintiff to judicial foreclosure. (Id., Ex. A at § IX.) The evidence shows that Plaintiff performed all of its obligations under the Settlement Agreement and Promissory Note (i.e., it dismissed the action settled by those agreements).

Lastly, Plaintiff has indicated that it has given notice to other lien holders by naming as Defendant First American Title Insurance Company, the trustee for the Deed of Trust. See Cal. Civ. Pro. § 729.010(b)(3). First American Title Insurance Company, as trustee, is required under Cal. Civ. Code § 2924j(a) to send written notice to all persons with recorded interests in the real property prior to the trustee's sale.[8]

Accordingly, summary judgment is granted as to Plaintiff's Second Claim.

---

[7] Specifically, California Code of Civil Procedure § 726(a) states: "In the action the court may, by its judgment, direct the sale of the encumbered real property or estate for years therein (or so much of the real property or estate for years as may be necessary), and the application of the proceeds of the sale to the payment of the costs of court, the expenses of levy and sale, and the amount due plaintiff, including, where the mortgage provides for the payment of attorney's fees, the sum for attorney's fees as the court shall find reasonable, not exceeding the amount named in the mortgage."

[8] California Civil Code § 2924j(a) provides: "Unless an interpleader action has been filed, within 30 days of the execution of the trustee's deed resulting from a sale in which there are proceeds remaining after payment of the amounts required by paragraphs (1) and (2) of subdivision (a) of Section 2924k, the trustee shall send written notice to all persons with recorded interests in the real property as of the date immediately prior to the trustee's sale who would be entitled to notice …."

### 3. Plaintiff Is Also Entitled to Prejudgment Interest

The Promissory Note provides that "[i]n the event of default under the Note … the principal shall bear interest at a default rate of ten percent (10%)." (Davidson Decl., Ex. C at § 1.) Plaintiff asserts that interest should run from September 17, 2009, which is the date of Defendants' default. Defendants have not disputed this date. As such, this Court finds that Plaintiff is entitled to prejudgment interest at a rate of ten percent, to run from September 17, 2009 to the date that judgment is entered.

### 4. Plaintiff's Request for Attorney's Fees and Costs

By this motion, Plaintiff has also requested an award of attorney's fees and costs in the amount of $16,068.76, pursuant to the terms of the Settlement Agreement and the Promissory Note. According to Plaintiff, that is the amount it has expended on enforcing the Settlement Agreement. Plaintiff further indicates that fees and costs "continue to accrue" and it "will seek their recovery by separate motion pursuant to Rule 54." (Plf.'s Mtn. at 9, fn. 6.) In order to avoid piecemeal adjudication of this issue, Plaintiff is directed to file a single motion under Federal Rule of Civil Procedure 54 to seek recovery of all attorney's fees and costs incurred. Plaintiff is entitled to reassert its claim for $16,068.76 at that time.

### III. CONCLUSION

For the above stated reasons,

IT IS HEREBY ORDERED:

1. Plaintiff's Motion for Summary Judgment is GRANTED with respect to its First Claim (Breach of Contract) and Second Claim (Foreclosure and Specific Performance of the Deed of Trust).

2. Defendants are indebted to Plaintiff in the amount of $700,000.00, which amount is secured by the Deed of Trust.

3. Plaintiff is entitled to prejudgment interest at a rate of ten percent, which shall run from September 17, 2009 to the date that judgment in this action is entered.

4. Plaintiff's request for attorney's fees and costs in the amount of $16,068.76 is DENIED without prejudice. Should Plaintiff choose to pursue an award of attorney's fees and

1  costs incurred in this action, Plaintiff is directed to file a single motion seeking such an award
2  under Federal Rule of Civil Procedure 54.
3       5.   This matter is REFERRED to the Chief Magistrate Judge or her designee for all
4  further proceedings relating to Plaintiff's Second Claim (Foreclosure and Specific Performance
5  of the Deed of Trust), including appointment of a receiver to sell the real and personal property
6  described in the Deed of Trust, and a determination of the amount of deficiency owed by
7  Defendants, if any, after the sale.
8       6.   This Order terminates Docket 15.
9       IT IS SO ORDERED.
10 Dated: 9/13/10                        _____
11                                       SAUNDRA BROWN ARMSTRONG
                                         United States District Judge